Jeffery **VAILLANCOURT,**
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 44A03–9712–CR–406.

Court of Appeals of Indiana.

May 22, 1998.

Transfer Denied July 21, 1998.

---

Alfred J. Gemrich, Scott Graham, Kalamazoo, for Appellant–Defendant.

Jeffrey A. Modisett, Andrew L. Hedges, Indianapolis, for Appellee–Plaintiff.

## OPINION

MATTINGLY, Judge.

Jeffery Vaillancourt was convicted after a jury trial of burglary resulting in serious bodily injury, a Class A felony.[1] He appeals his conviction, raising the following issues for review:

    I.   Whether the trial court erred when it denied Vaillancourt's motion for discharge.

    II.   Whether the trial court erred when it denied Vaillancourt's motion to dismiss the charging information.

    III.   Whether the term "extreme pain," found in Ind.Code § 35–41–1–25, is unconstitutionally vague.

    IV.   Whether Vaillancourt's right to be protected from double jeopardy was violated when he was convicted.

    V.   Whether the trial court erroneously admitted testimony at trial.

    VI.   Whether sufficient evidence supports Vaillancourt's conviction.

Affirmed.

## FACTS [2]

■ On May 4, 1995, Brandon Eidson and Vaillancourt traveled by car to the house of Gary Everage. Upon arrival, Vaillancourt handed Eidson a can of mace. Eidson got out of the car, walked up to the front door of the house and rang Everage's doorbell. Everage inquired what Eidson wanted, and Eidson replied that Vaillancourt wished to speak with him. When Everage opened the door, Eidson sprayed mace in Everage's face. Eidson then laid hold of Everage, and the

two men struggled inside the house. Eidson, realizing that Everage had a gun, shouted to Vaillancourt "Come and help me." R. at 278. Vaillancourt entered the house and picked up a glass jar filled with nuts and bolts. He hit Everage over the head with the jar, and Everage appeared to lose consciousness. When Everage regained his senses, he exited his house through the back door, escaping to a marshy area near his backyard. Eidson and Vaillancourt then left the house and fled on foot from the crime scene.

On May 8, 1995, Vaillancourt was charged with and arrested for burglary resulting in serious bodily injury, a Class A felony. He was convicted of this charge after a jury trial.

## DISCUSSION

#### I.   Whether the trial court erred when it denied Vaillancourt's motion for discharge.

On May 22, 1997, Vaillancourt moved for discharge pursuant to Ind.Crim. Rule 4(C) claiming that the state had failed to bring him to trial within one year of his arrest. Vaillancourt argues that the trial court erred when it denied his motion for discharge.

■ Crim.R. 4(C) provides in part:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such

---

1.  Ind.Code § 35–43–2–1 provides:

    A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant.

2.  Vaillancourt's statement of the facts does not comply with Ind. Appellate Rule 8.3(A)(5), as it contains a lengthy recitation of all of the testimony elicited at the trial. This Court has stated repeatedly that "a summary of the witnesses' testimony is not a statement of the facts within the meaning of the appellate rules." *Mitchell v. Stevenson*, 677 N.E.2d 551, 555 n. 1 (Ind.Ct.App. 1997). Despite this failure to comply, we will address the merits of the issues herein.

period because of congestion of the court calendar....

If a defendant seeks or acquiesces in any continuance, or if the delay is caused by his own motion or action, the one-year statute is extended accordingly. *Wheeler v. State*, 662 N.E.2d 192, 193 (Ind.Ct.App.1996).

In the instant case, the record reflects that 743 days elapsed between the arrest and the trial. The relevant procedural history is:

1. May 8, 1995—Vaillancourt charged and arrested.

2. August 28, 1995—Trial court scheduled Vaillancourt's trial for May 21, 1996, citing congestion of the court calendar.[3]

3. May 15, 1996—Vaillancourt requested a continuance. His request was granted, and trial was rescheduled for September 24, 1996.

4. August 19, 1996—Vaillancourt requested a continuance. His request was granted, and trial was rescheduled for January 15, 1997.

5. January 15, 1997—Vaillancourt advised the trial court that a plea agreement had been reached and that a trial was not necessary. A change of plea hearing was scheduled for March 3, 1997.

6. March 3, 1997—The change of plea hearing was rescheduled for March 17, 1997.

7. March 17, 1997—Vaillancourt requested that his change of plea hearing be rescheduled. His request was granted, and his hearing was rescheduled for April 7, 1997.

8. April 7, 1997—The trial court rescheduled the change of plea hearing for April 28, 1997, noting that "delay is chargable [sic] to [Vaillancourt.]"

9. April 28, 1997—The trial court, "[b]y agreement of the parties," rescheduled the change of plea hearing for May 5, 1997.

10. May 5, 1997—Vaillancourt chose not to plead guilty, and the trial court scheduled his trial for May 22, 1997.

11. May 22, 1997—Trial began.

R. at 2–3.

Vaillancourt argues that two periods of delay, totaling 389 days, are not chargeable to him. Specifically, he points to the period from the arrest on May 8, 1995 to the motion for continuance on May 15, 1996—a period of 372 days; and from May 5, 1997, when he chose not to plead guilty and the trial date was rescheduled, to May 22, 1997, when the trial actually took place—a period of 17 days.

The state concedes that the time which elapsed from Vaillancourt's arrest on May 8, 1995 to August 28, 1995, when the initial trial date was scheduled, a period of 112 days, is chargeable against Crim.R. 4(C)'s one-year period. In addition, the state concedes that the time which elapsed from March 3, 1997—for rescheduling of a plea hearing—to March 17, 1997, a 14–day period, is chargeable against the one-year period. The state therefore concedes that 126 days of delay are chargeable against the one-year period.

■ The crucial time period in issue is from August 28, 1995 to May 15, 1996. On August 28, 1995, the trial court scheduled Vaillancourt's trial for May 21, 1996—more than a year from the arrest—citing congestion of the court's calendar. Rule 4(B)(1) not only sets deadlines by which trials must be held to ensure a defendant a speedy trial, it also grants trial courts the authority to exceed deadlines in the event of court congestion. *Austin v. State*, 682 N.E.2d 1287, 1288 (Ind.1997). As was explained in *Clark v. State*, 659 N.E.2d 548, 551 (Ind.1995), congestion is a legitimate basis for postponing a trial beyond the standard contained in Rule 4.

■ "Upon appellate review, a trial court's finding of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court." *Id.* at 552. A defendant may contest that finding, however, by filing a Motion for Discharge and demonstrating the finding of congestion was factually or legally inaccurate at the time the trial court made its decision

---

**3.** In the trial court's chronological summary, the entry for August 28, 1995, states in part: "At the request of [Vaillancourt], the court sets cause for

trial to a twelve person jury on May 21, 1996 at 9:00 a.m. (3 days are set aside) (due to the congestion of the Court's calendar)[.]" R. at 2.

to postpone trial. *Id.* "Such proof would be prima facie adequate for discharge, absent further trial court findings explaining the congestion and justifying the continuance." *Id.* The trial court's explanations are to be accorded reasonable deference, and only by showing that the trial court was clearly erroneous can a defendant establish his entitlement to relief. *Id.*

■ In the present case, Vaillancourt did file a Motion to Dismiss pursuant to Crim.R. 4(C), but did not cite any factual basis or evidence for his contention the delay was not due to the congestion of the court calendar. R. at 65. As noted in *Bridwell v. State*, 659 N.E.2d 552, 554 (Ind.1995), "a defendant must present evidence, either at the time of the motion for discharge or upon a motion to correct error, demonstrating that the finding of 'congestion' is clearly erroneous." Vaillancourt has not made that requisite showing. As a result, although a period of over two years separates Vaillancourt's arrest and trial, only 126 days of this period are chargeable against the one-year period within which Vaillancourt was required to be brought to trial under Crim.R. 4(C). The trial court therefore did not err when it denied Vaillancourt's motion for discharge.

## II. Whether the trial court erred when it denied Vaillancourt's motion to dismiss the charging information.

After he was convicted, Vaillancourt filed a motion alleging that the charging information was defective and requesting, among other things, dismissal of the charging information. Vaillancourt claims that the trial court erred when it denied his motion.

■ The proper time for raising the insufficiency of the charging information is prior to arraignment. *Marshall v. State*, 602 N.E.2d 144, 147 (Ind.Ct.App.1992), held that "[a]ny challenge to the adequacy of an information must be made by motion to dismiss prior to arraignment. Otherwise, any error in that regard is waived." As a result, we hold that this issue of error is waived.

## III. Whether the term "extreme pain," found in Ind.Code § 35–41–1–25, is unconstitutionally vague.

Vaillancourt was convicted of burglary resulting in serious bodily injury, a Class A felony. Ind.Code § 35–43–2–1. Serious bodily injury "means bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–25. Vaillancourt argues that his conviction must be vacated, claiming that the term "extreme pain" is unconstitutionally vague.

■ Vaillancourt's argument fails for two reasons. First, this claim is waived because it was not properly raised in the trial court. *See Regan v. State*, 590 N.E.2d 640, 645–46 (Ind.Ct.App.1992) (holding that "[t]he failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal"). Second, the argument that "extreme pain" is unconstitutionally vague fails on its own merit. *Guidry v. State* found that a statute would be unconstitutional under the vagueness doctrine "if the accused 'establishes that the statute forbids conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application.'" 650 N.E.2d 63, 66 (Ind.Ct.App.1995) (quoting *Van Sant v. State*, 523 N.E.2d 229, 233 (Ind.Ct.App. 1988)). This Court has found that a statute is not unconstitutional as vague if "individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed. The statute need only inform the individual of the generally proscribed conduct; a statute need not list, with itemized exactitude, each item of conduct prohibited." *Mallory v. State*, 563 N.E.2d 640, 644 (Ind.Ct.App.1990).

■ We hold that the term "extreme pain" is not one which persons of average intelligence cannot understand. As a result, this term is not unconstitutionally vague.

IV. Whether Vaillancourt's right to be protected from double jeopardy was violated when he was convicted.

Vaillancourt claims that his right to be protected from double jeopardy was violated when he was convicted. The Double Jeopardy clause generally protects people from three things: a second prosecution for the same offense after a conviction; a second prosecution for the same offense after an acquittal; and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–2077, 23 L.Ed.2d 656 (1969). Since Vaillancourt was charged with and convicted of one offense—burglary resulting in serious bodily injury—double jeopardy could not apply.

V. Whether the trial court erroneously admitted testimony at trial.

Vaillancourt argues he was denied a fair trial as a result of certain testimony given by his ex-wife, Kim Cooper. At trial, Cooper testified that she heard a conversation between Eidson and Vaillancourt. Over Vaillancourt's objection, Cooper further testified that she understood what Vaillancourt said during the conversation to be his attempt to have Eidson "cover" for him. R. at 410.

The testimony given by Cooper was merely cumulative of other trial testimony.[4] We therefore do not decide whether the admission of Cooper's testimony was error, for, even if it was, the error would not be reversible. *See Sledge v. State*, 677 N.E.2d 82, 86

(Ind.Ct.App.1997) (holding that "erroneously admitted evidence that is merely cumulative is not reversible error"). Vaillancourt's claim fails.

VI. Whether sufficient evidence supports Vaillancourt's conviction.

Vaillancourt claims that insufficient evidence supports his conviction of burglary resulting in serious bodily injury. "When reviewing appeals asserting insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses." *Pointer v. State*, 585 N.E.2d 33, 34 (Ind.Ct. App.1992). "Instead, we look to the evidence favorable to the verdict, along with any inferences reasonably drawn therefrom." *Id.* "A verdict supported by substantial evidence of probative value will be affirmed." *Id.*

One commits burglary resulting in serious bodily injury if he "[1] breaks and enters the building or structure of another person, [2] with intent to commit a felony in it, ... [3] [and the offense] results in ... serious bodily injury to any person other than a defendant." Ind.Code § 35–43–2–1. Vaillancourt argues that the evidence failed to show that the second and third elements of burglary resulting in serious bodily injury are satisfied.

The evidence most favorable to the verdict was that before the crime occurred, Vaillancourt and Eidson formed a plan to spray Everage with mace and to do Everage bodily harm.[5] From this testimony,

---

4. Cooper's testimony was cumulative of the following testimony given by Eidson:
   [Prosecutor]: Tell the jury exactly what [Vaillancourt] said ... and what you said.
   [Eidson]: [Vaillancourt said] he's got a lot to lose. He'll help me out in any way to get out of this.
   [Prosecutor]: And what did you say?
   [Eidson]: "Okay. I will."
   [Prosecutor]: What did you understand [Vaillancourt] to mean by "I'll help you get out of this"?
   [Eidson]: Save him, help him, make sure he's not even there, you know.
   [Prosecutor]: Cover for him.
   [Eidson]: Right.
   R. at 340–41.

5. Eidson testified as follows:
   [Prosecutor]: ... Between the time you turned on State Road 3 and the time you arrived at

[Everage's house], did you have any conversation [with Vaillancourt]?
[Eidson]: [Vaillancourt] just asked me to hold on to this can of Mace for him.
   . . . .
[Prosecutor]: Okay. So the plan was to spray [Everage] with Mace—
[Eidson]: Yes.
[Prosecutor]: And ultimately to do what?
[Eidson]: Bodily harm.
[Prosecutor]: So that was discussed on the way to [Everage's house], is that right?
[Eidson]: ... yes.
[Prosecutor]: And once you turned onto State Road 3 Mr. Vaillancourt gives you this can of Mace then to use.
[Eidson]: Right.
[Prosecutor]: In furtherance of the plan.
[Eidson]: Right.
R. at 331–34.

**612**

a reasonable jury could conclude that Vaillancourt entered Everage's house with an intent to commit the felony of battery resulting in serious bodily injury.[6] In addition, testimony was elicited at trial that Vaillancourt hit Everage over the head with a glass jar containing nuts and bolts; that the blow from the jar caused Everage to fall to his knees; that Everage appeared to lose consciousness from the blow; that, as a result of his encounter with Vaillancourt, Everage sustained multiple bruises, a damaged wrist, a concussion, and a three-inch head wound. Everage also testified that he suffered extreme pain as a result of being hit over the head with the glass jar. From this evidence a reasonable jury could conclude that Vaillancourt's offense resulted in serious bodily injury to Everage. There is sufficient evidence to support Vaillancourt's conviction.

Affirmed.

GARRARD and HOFFMAN, JJ., concur.

---

**6.** Battery—the knowing or intentional touching of another person in a rude, insolent, or angry manner—is a Class C felony "if it results in serious bodily injury to any other person...." Ind.Code § 35–42–2–1(a)(3).